**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **CRIMINAL NO. 1:22-cr-77-TBM-RPM**

**BRADFORD THOMPSON, Jr.**

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

A confidential informant informed the Mississippi Bureau of Narcotics that Bradford Thompson, Jr. was a large-scale drug dealer, and the informant said he had personally observed, on several occasions, large quantities of heroin, marijuana, and bulk currency at Thompson's home. Law enforcement officers stopped Thompson after he was observed driving in a careless manner and failing to use a signal. Officers detected the smell of marijuana coming from his vehicle during the stop and discovered marijuana in his possession. Then, Thompson's home was searched pursuant to a search warrant where officers discovered large amounts of fentanyl, cocaine, and marijuana. Law enforcement officers arrested Thompson and he admitted to distributing the substances.

Thompson requests the Court suppress evidence of all of the drugs discovered during the search. Thompson alleges that this evidence should not be admissible because the stop was pretextual and the affidavit used to secure the warrant to search his home was based off an unreliable and untrustworthy confidential informant's stale information and therefore the affidavit is "bare bones." The Court disagrees. The stop was valid and the information in the affidavit was adequate because under the totality of the circumstances the affidavit provided a sufficient indicia

of probable cause to support the search of Thompson's home. The Motion [27] to Suppress is denied.

## I. BACKGROUND

On May 9, 2022, a Jackson County Court Judge signed a warrant authorizing officers to search Bradford Thompson, Jr.'s residence for drugs.[1] [27-2], pg. 5. The search warrant was based on an affidavit sworn to by Drug Enforcement Administration Task Force Officer Rob Drace. *Id*. According to the affidavit, in April of 2022, officers received information from a "credible and reliable" confidential informant that on several occasions the informant "observed large quantities of heroin, marijuana and bulk currency inside the residence." *Id*. "The confidential source further related that [Thompson] is known to distribute multiple ounce size quantities of heroin and pound quantities of marijuana to various individuals in Harrison and Jackson County." *Id*.

Based on this information, agents of the Mississippi Bureau of Narcotics conducted surveillance on Thompson's residence and "observed a red GMC Sonoma" that was consistent with the confidential informant's identification of such vehicle. *Id*. "Agents initiated surveillance on the vehicle as it made many stops after leaving the residence at open and closed business[es], in a short distance, before returning to the residence." *Id*. "[A]gents identified this behavior as a 'heat run'. . . . utilized to identify tailing vehicles as in this case, law enforcement officers." *Id*. Officer Drace observed "this same driving behavior" on multiple occasions. *Id*.

On May 9, 2022, agents saw the red GMC Sonoma depart from the home. *Id*. "Agents followed the vehicle as it proceeded onto the on ramp to Interstate 10 West and was observed

---

[1] At the hearing on the Motion, Officer Drace testified that there was an error in the address description on the warrant. The address in the affidavit was listed as 15625 Big Ridge Road. However, the correct address is 15629 Big Ridge Road. *See United States v. Lopez*, 582 F. App'x 438, 443–44 (5th Cir. 2014) (holding an incorrect address is not fatal).

driving in a careless manner, failing to signal and failing to maintain its lane of travel." *Id*. A traffic stop was conducted and Officer Drace and Mississippi Bureau of Narcotics Captain Sullivan "smelled an immense and distinct odor of marijuana emitting from within the vehicle." *Id*. During the stop, Thompson gave "false information about his departure location and destination" and he possessed "an iPhone and an older flip style phone, often utilized in drug distribution to thwart detection and tracking." *Id*. Thompson also admitted to the use and possession of marijuana, which ultimately resulted in a search of his vehicle. *Id*. Officers discovered a marijuana cigarette in the vehicle and concluded the totality of the above facts supported a search warrant for Thompson's home. *Id*. at 4.

Based on this information, the judge signed the search warrant on May 9, 2022. *Id*. at 5. During the search, officers discovered "over 1,000 grams of a substance that field tested positive for fentanyl, over 500 grams of substance that field tested positive for cocaine, approximately 2 pounds of suspected marijuana, over $30,000 cash, a Smith & Wesson, MP40 handgun, with a round of ammunition in the chamber and 14 rounds of ammunition in the magazine." [28], pg. 4. "Thompson subsequently admitted to officers that he was in fact distributing the substances located in his home." *Id*.

On June 7, 2022, Thompson was indicted for possession with the intent to distribute both fentanyl and cocaine. Thompson now argues that the evidence obtained pursuant to the warrant and any statements obtained by officers are "fruit of the poisonous tree because it was obtained in violation of Mr. Thompson's constitutionally protected right to be free from illegal search and seizure." *Id*. at 5.

## II. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further requires that all warrants be supported by probable cause. *See* U.S. Const. amend. IV. "Evidence collected in violation of that requirement is typically subject to the exclusionary rule and may be suppressed to deter future law enforcement misconduct." *United States v. Bell*, 832 F. App'x 298, 300–01 (5th Cir. 2020) (citing *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019).[2] Application of the exclusionary rule is not automatic, however. When law enforcement officers seize evidence through objectively reasonable reliance on a search warrant, the Fourth Amendment does not require that courts suppress the evidence. *United States v. Huerra*, 884 F.3d 511, 515 (5th Cir. 2018) (citing *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). This principle is the good-faith exception to the exclusionary rule. *Huerra*, 884 F.3d at 515.

In considering a motion to suppress, the Court engages in a two-part inquiry: (1) whether the good-faith exception to the exclusionary rule applies and (2) whether the warrant was supported by probable cause. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993) (citing *Leon*, 486 U.S. 897, 104 S. Ct. 3405). "Principles of judicial restraint and precedent dictate that, in most cases, [the Court] should not reach the probable cause issue if a decision on the admissibility

---

[2] The "original public meaning" of the Fourth Amendment historically suggests that the remedy for a violation was a suit for trespass. *United States v. Beaudion*, 979 F.3d 1092, 1094–96 (5th Cir. 2020); *California v. Acevedo*, 500 U.S. 565, 581, 111 S. Ct. 1982, 1992, 114 L. Ed. 2d 619 (1991) (Scalia, J. concurring) ("An officer who searched or seized without a warrant did so at his own risk; he would be liable for trespass, including exemplary damages, unless the jury found that his action was 'reasonable.'") (citing Akhil Reed Amar, *The Bill of Rights as a Constitution*, 100 Yale L.J. 1131, 1178–80 (1991). "In the 20th century, however, the exclusionary rule—the rule that often requires trial courts to exclude unlawfully seized evidence in a criminal trial—became the principal judicial remedy to deter Fourth Amendment violations." *Utah v. Strieff*, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016).

of the evidence under the good-faith exception of *Leon* will resolve the matter." *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988).

In seeking suppression, Thompson argues the following: (1) the stop was pretextual; (2) the warrant's affidavit was "bare bones" and "lacked any indicia of probable cause" that belief in the existence of probable cause was entirely unreasonable; and (3) the information from the confidential informant was stale. [27].

### 1. Whether the Traffic Stop Was Constitutional

Thompson contends that the stop was pretextual and "the proper inquiry is whether a reasonable officer would have made the seizure in the absence of illegitimate motivation." [27], pg. 14. But this is the wrong inquiry because, "[i]n 1996, the Supreme Court approved the use of pretextual stops." *Crane v. City of Arlington, Texas*, 50 F.4th 453, 457 (5th Cir. 2022) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). As a result, the personal motivations are not relevant as long as "the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810, 116 S. Ct. 1769. Further, the Fifth Circuit has stated that for "a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005). To that end, "in making a reasonable suspicion inquiry, a court 'must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.'" *Id.* (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)).

According to the affidavit, Officer Drace observed Thompson "driving in a careless manner, failing to signal and failing to maintain [his] lane of travel." [27-2]. Thompson alleges that Officer Drace "made up facts to support his basis for the stop." [27], pg. 14. But neither at the suppression hearing nor in the briefing does he actually dispute that he crossed the center lines and failed to signal. And, at the suppression hearing, Officer Drace went into further detail about everything he witnessed concerning Thompson's driving that supported these traffic violations. Regardless, the reasonableness of a traffic stop does not hinge on "the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813. Since all evidence presented demonstrates that Officer Drace observed Thompson fail to use a traffic signal and fail to maintain his lane of travel, there was a legitimate basis for the traffic stop. *See id*. at 810. Accordingly, Thompson's admission of the use and possession of a "marijuana cigarette" during the traffic stop is admissible.

### 2. Whether the Good-Faith Exception to the Exclusionary Rule Applies

Thompson claims that the good-faith exception to the exclusionary rule does not apply because the information provided by the confidential informant was unreliable and stale, therefore it was insufficient to establish probable cause to support the search of his home. [27], pps. 9–10. The good-faith exception provides that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing *Leon*, 468 U.S. at 922–23). "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Craig*, 861 F.2d at 821 (citing *Leon*, 468 U.S. at 922–

23). However, the Supreme Court identified four scenarios in which the good-faith exception to the warrant requirement does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*United States v. Massi*, 761 F.3d 512, 529–30 (5th Cir. 2014) (citing *Leon*, 468 U.S. at 921–25). Here, Thompson's arguments about the good-faith exception discuss only the third *Leon* scenario: whether the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *See Leon*, 468 U.S. at 921–25.

### a. Whether the Warrant Affidavit was "Bare Bones"

Thompson's contention that the good-faith exception does not apply relies on the warrant affidavit being allegedly "bare bones." A "bare bones" affidavit typically contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006). For example, affidavits "that merely state that the affiant 'has cause to suspect and does believe' or 'has received reliable information from a credible person and does believe' that contraband is located on the premises" are bare bones. *Huerra*, 884 F.3d at 515 (quoting *Pope*, 467 F.3d at 920). "An affidavit is 'bare bones' if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable." *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997). The Court makes the "bare bones" determination by evaluating the totality

of the circumstances. *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

In determining the sufficiency of an affidavit, the Fourth Amendment requires that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation" as was the case here. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965). "Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Ventresca*, 380 U.S. at 108, 85 S. Ct. 741. An affidavit must provide sufficient reliable information to determine probable cause. *See United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987). "In making this determination, however, the officer may draw reasonable inferences from the material he receives, and his ultimate probable cause decision should be paid great deference by reviewing courts." *May*, 819 F.2d at 535 (citing *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985) (quoting *United States v. Phillips*, 727 F.2d 392, 394 (5th Cir. 1984))).

Thompson alleges that the affidavit was "bare bones" because the affiant failed to establish the credibility and reliability of the confidential informant. [27], pg. 10. In *Gates*, the Supreme Court "explicitly rejected the two prong test enunciated in *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), which required the magistrate to separately evaluate (1) the informant's basis of knowledge and (2) the informant's veracity or reliability." *United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991) (citing *Gates*, 462 U.S. at 230–31). The Fifth Circuit has since explained that it is now unnecessary "to establish the *Spinelli* elements independently[.]"

*Brown*, 941 F.2d at 1303. "Rather than adopt rigid rules regarding the use of informants, the Supreme Court opted for a 'totality-of-the-circumstances' approach to a magistrate's finding of probable cause." *Id.* at 1303–04.

"An informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006) (quoting *Gates*, 462 U.S. at 230). But "[t]he *Gates* standard permits a finding of probable cause even if both the informant's personal reliability and the basis of the tip are not established since 'a deficiency in one may be compensated for, in determining the overall reliability of a tip, *by a strong showing as to the other*, or by some other indicia of reliability.'" *United States v. Barbin*, 743 F.2d 256, 259 (5th Cir. 1984) (emphasis in original) (citing *Gates*, 462 U.S. at 233).

### (1) Informant's Veracity or Reliability

"[A]n affiant can establish the credibility of an informant or the reliability of his information in several ways. The most common method has been for the affiant to allege that the informant has previously given tips that proved to be correct." *Phillips*, 727 F.2d at 396. Here, the affidavit did not set forth whether the informant had previously provided tips to law enforcement. Therefore, Thompson argues the Court should determine that the affidavit is "bare bones." [27], pg. 15.

However, an affiant can establish the credibility or reliability of an informant by "showing other knowledge within the affiant's knowledge to verify the tip." *Phillips*, 727 F.2d at 396. It is not essential that the affiant aver that the informant was previously reliable. *See United States v. Harris*, 403 U.S. 573, 581–82, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). "[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the

case." *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983) (citing 1 W. LaFave, Search & Seizure, § 3.4(a), at 592 (1978)). An informant will not have the opportunity to show prior credibility or reliability in every instance. In light of the "totality of the circumstances" standard permitted by *Gates*, a confidential informant's tip may be compensated for by his basis of knowledge or corroboration. *Phillips*, 727 F.2d at 395–99 (citations omitted); *Fisher*, 22 F.3d at 578 (citing *Gates*, 462 U.S. at 241). For example, in *Laury*, the Fifth Circuit held that despite not specifying how or the source of a confidential informant's information, "the magistrate could have reasonably concluded the [confidential informant] obtained the information in a reliable manner" in light of the surrounding circumstances. *Laury*, 985 F.2d at 1313. For these reasons, the Court will now move to an analysis of the basis of knowledge and of corroboration.

### (2) Informant's Basis of Knowledge

An informant's basis of knowledge can be established by first-hand knowledge, the detail of the information given, or police investigation corroboration. *See United States v. Fields*, 72 F.3d 1200, 1214 (5th Cir. 1996) (finding affidavit was not bare bones where the informant's tip was corroborated by police investigation and it included detailed information provided by informants such as names, addresses, and amounts of money); *See also Laury*, 985 F.2d 1293 (probable cause existed in part because confidential informant had provided a detailed tip from an eyewitness to the robbery); *Satterwhite*, 980 F.2d 317; *United States v. McKnight*, 953 F.2d 898 (5th Cir. 1992) (affidavit was not bare bones where confidential informant personally observed methamphetamine inside the defendant's residence); *United States v. Cutwright*, 247 F. App'x 499 (5th Cir. 2007).

### (i) Informant's Personal Observations

The Supreme Court held in *Gates*, a first-hand, personal observation "entitles [a confidential informant's] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. So unsurprisingly, "[d]irect personal observation is a sufficient basis of knowledge." *United States v. Gallegos*, 239 F. App'x 890 (5th Cir. 2007) (citing *Mack*, 461 F.3d at 551; *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006) (affidavit was not bare bones where affidavit alleges personal observation of cocaine and accurately identified the residence and car which was confirmed by law enforcement officers).

This is why when the Fifth Circuit has found that affidavits satisfy either the probable cause or good-faith exception standards "the affidavits often include some indication of personal knowledge, usually through direct observation on the part of the informant." *United States v. Coleman*, 540 F. Supp. 3d 596, 606 (S. D. Miss. May 18, 2021) (citations omitted). And the lack of veracity of the informant, as a standalone issue, does not require rejection of this direct observation. For instance, in *Fisher*, the Fifth Circuit held that although the affidavit did "not vouch for the informant's veracity. It reflects, however, a first-hand basis of knowledge with respect to the reported drug purchases." *Fisher*, 22 F.3d at 579 (further recognizing how other "aspects of the informant's report" were corroborated as well). Quite simply, personal observation can be one of the primary tools used to paint the full "totality of the circumstances" picture. Here, the confidential informant personally observed on several occasions "large quantities of heroin, marijuana and bulk currency inside the residence." [27-2], pg. 3. The Court does not have to determine if this amount of personal observation would be sufficient in and of itself though. This is because there is also corroboration as analyzed below.

### (ii) Corroboration or Investigation of Informant's Statements

In evaluating the veracity and basis of knowledge of the informant, courts also consider whether police corroborated the informant's statements or conducted an independent investigation. *See Cisneros*, 112 F.3d at 1279; *Untied States v. Pena-Rodriguez*, 110 F.3d 1120, 1130–31 (5th Cir. 1997) (finding that "taken together, the information provided by [the informant] and the contemporary corroborative evidence gathered by the government" which included aerial surveillance and personal observations of investigators "were sufficient for a reasonable officer to believe that the challenged warrant was based on probable cause").

To corroborate the confidential informant, Officer Drace and members of the Mississippi Bureau of Narcotics surveilled Thompson and verified the informant's tip that described Thompson's red GMC Sonoma and residence on Big Ridge Road. [27-2], pg. 3. Further, law enforcement identified Thompson's suspicious form of driving patterns as "heat runs." [27-2], pg. 3, *See Bell*, 832 F. App'x at 301–302 (holding the affidavit was not bare bones where the totality of the circumstances provided observations and inferences sufficient to connect a defendant's drug trafficking to a particular location); *Massi*, 761 F.3d at 530 (holding that the affidavit was not bare bones where it described defendant's suspicious flight patterns, the observation of a cardboard box that ultimately contained marijuana, as well as the contradictory statements regarding ownership of the box, and the defendant's response to questioning). Also, Thompson "provided false information about his departure location and destination." Officers further discovered evidence of marijuana possession and Thompson admitted to as much during the course of the stop. [27-2], pg. 3. "During the stop, Thompson made several calls and continued to attempt to make several calls on one of the two phones in his possession." *Id*. Thompson had two cell phones in his

possession, "an iPhone and an older flip style phone, often utilized in drug distribution." *Id*. Based on these facts, the investigation by law enforcement officers corroborated the confidential informant's tip sufficiently. *Fisher*, 22 F.3d at 578 (citing *Gates*, 462 U.S. at 241, 103 S. Ct. 2317).

### (3) The Affidavit was not Bare Bones

"Either 'direct observation' or 'normal inferences' can support" that officers objectively could reasonably believe that drugs were located in Thompson's residence. *Bell*, 832 F. App'x at 301 (citing *Satterwhite*, 980 F.2d at 320). The affidavit set forth a confidential tip based off personal observation of large quantities of drugs and bulk currency that were seen on several occasions, an independent investigation by law enforcement that corroborated a number of facts, as well as a traffic stop that resulted in the discovery of marijuana. Officer Drace acted in objectively reasonable good-faith reliance upon the search warrant because the supporting affidavit was not "so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923; *See Fisher*, 22 F.3d at 579; *Cordero*, 465 F.3d at 630.

## b. Whether the Confidential Informant's Tip was Stale

Thompson's final argument is that the confidential informant's tip was too stale to support probable cause. [27], pg. 4. "Whether a tip has become stale is not assessed merely by mechanical counting of time between when a tip is received and when it is investigated." *United States v. Rose*, 48 F.4th 297, 306 (5th Cir. 2022) (citing *United States v. Gonzalez*, 190 F.3d 668, 673 (5th Cir. 1999). Rather, Fifth Circuit precedent shows that staleness is "determined on the facts of each case." *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984) (citing *United States v. Freeman*, 685 F.2d 942 (5th Cir. 1982)).

The Fifth Circuit has held that "[i]t is a fundamental principle of search and seizure law that the information given to the magistrate in the application for a search warrant must be timely." *United States v. Hyde*, 574 F.2d 856, 864 (5th Cir. 1978) (citing *Sgro v. United States*, 287 U.S. 206, 53 S. Ct. 138, 77 L. Ed. 260 (1932)). The affidavit for the search warrant lists the date of the tip from the informant as "April 2022" where a confidential informant reported that large quantities of heroin, marijuana, and bulk currency were personally observed inside Thompson's home on several occasions. [27-2], pg. 3. However, the warrant was not sought until May 9, 2022. *Id*. at 4. At most, a little over one month went by before law enforcement sought the warrant. "Fairly long periods of time are allowed to elapse between information and a search warrant in cases where the evidence clearly shows . . . a longstanding, on-going pattern of criminal activity." *United States v. Robins*, 978 F.2d 881, 892 (5th Cir. 1992) (quoting *Hyde*, 574 F.2d at 865).

In *United States v. Thompson*, the Fifth Circuit held—in an unpublished opinion—that a tip that "described open-ended activity" was not stale although months went by between the tip and the stop. *United States v. Thompson*, 783 F. App'x 360, 364 (5th Cir. 2019) (holding a "generous six-months between the tip and the stop" was not considered stale). This is persuasive as the confidential informant reported Thompson as a "large-scale heroin dealer operating along the Mississippi Gulf Coast." [27-2], pg. 3. Further, the tip described open-ended activity—that Thompson "is known to distribute multiple ounce size quantities of heroin and pound quantities of marijuana"—not that he would act in a certain way on a particular date. [27-2], pg. 3; *See Thompson*, 783 F. App'x at 365; *Gonzalez*, 190 F.3d at 673 (affirming denial of motion to suppress in which officers detained defendant two months after informant had given an open-ended tip that defendant was engaged in smuggling). This aligns with the Fifth Circuit's "opinions [that]

14

consistently bear out that information describing 'a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information' and subsequent detention or search is not considered 'stale.'" *Thompson*, 783 F. App'x at 365. (quoting *Craig*, 861 F.2d at 822–23).

Moreover, other Circuits have similar positions. In *United States v. Ortiz*, the Second Circuit found in an investigation of "ongoing narcotics operations, 'intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale.'" *United States v. Ortiz*, 143 F.3d 728, 732–33 (2d Cir. 1998) (quoting *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991)). The Second Circuit went on to recognize that "narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *Ortiz*, 143 F.3d at 733 (quoting *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990)). Similarly, the Ninth Circuit has held that an affidavit that indicates the defendant was "engaged in narcotics trafficking in late April and early May" of 1985 was not stale where the warrant was issued on May 24, 1985. *United States v. Angulo-Lopezi*, 791 F.2d 1394, 1399 (9th Cir. 1986). "With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity." *Angulo-Lopezi*, 791 F.2d at 1399 (citing *United States v. Landis*, 726 F.2d 540, 542 (9th Cir. 1983), *cert. denied*, 467 U.S. 1230, 104 S. Ct. 2688, 81 L. Ed. 2d 882 (1984)).

Again, the affiant in this case waited, at most, just over one month from the confidential informant's tip to seek the search warrant. [27-2]. The affidavit also made out a case of Thompson utilizing multiple mobile devices including a flip phone that is often used in the drug trade, performing "heat runs," and a stop where Thompson lied about his travels and where marijuana

possession was admitted. *Id.* Additionally, the confidential informant's tip described Thompson as a "large-scale heroin dealer" further substantiating that Thompson's drug operation was an ongoing enterprise. *Id.* The facts of this case do not demonstrate a stale tip.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress Evidence [27] is DENIED.

**IT IS FURTHER ORDERED** that the previously filed Motion to Suppress [26] is MOOT.

**SO ORDERED** on this, the 9th day of December, 2022.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE